**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES D. SHATTUCK-KNAEBEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-454 HEA |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

Self-represented Plaintiff Charles Shattuck-Knaebel brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. The matter is now before the Court upon multiple motions filed by Plaintiff. First, Plaintiff seeks leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. ECF No. 2. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $43.82. *See* 28 U.S.C. § 1915(b)(1). As Plaintiff is now proceeding *in forma pauperis* in this matter, the Court must review his pleadings under 28 U.S.C. § 1915. Based on such review, the Court will direct Plaintiff to file a second amended complaint on the Court-provided form in compliance with the instructions set out below.

Second, Plaintiff asks for a temporary restraining order regarding his housing placement based on an administrative segregation hearing held on April 2, 2024, from which Plaintiff alleges falsified documents resulted. ECF No. 7. As discussed herein, Plaintiff's allegations do not meet the standards required for temporary injunctive relief so this motion will be denied.

Third, Plaintiff requests the appointment of counsel. ECF No. 3. As there is no constitutional right to appointment of counsel in civil cases and it would be premature to grant

appointment at this stage in the proceeding, the Court will deny Plaintiff's motion for counsel, subject to refiling at a later date. The Court warns Plaintiff that his failure to comply with this Order will result in dismissal of this action.

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff is a convicted and sentenced state prisoner at Potosi Correctional Center ("PCC") in Mineral Point, Missouri. ECF No. 1 at 2. In support of his motion to proceed without prepaying fees and costs, Plaintiff submitted an inmate account statement showing average monthly deposits of $32.50 and an average monthly balance of $219.08 (as of the tenth of each month). ECF No. 10. The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $43.82, which is twenty percent of Plaintiff's average monthly balance. *See* 28 U.S.C. § 1915(b)(1).

### Initial Review of the Pleadings

## I.    The Amended Complaint[1] and Exhibits

As discussed above, Plaintiff[2] is a convicted and sentenced state-court prisoner currently being held at Potosi Correctional Center (PCC), a Missouri Department of Corrections (MDOC) facility.  ECF No. 1 at 2.  He brings this § 1983 action against 65 defendants including MDOC, 54 MDOC employees, Centurion,[3] and 9 Centurion employees.  *Id.* at 1-22.  All defendants are named in both their individual and official capacities.  *Id.*

Plaintiff's 50-page Statement of Claim is long, disjointed, repetitive, and contains unrelated claims.  *Id.* at 24-74.  Although Plaintiff divides his allegations into 5 "Claim[s]," each "Claim" contains numerous unconnected allegations and defendants.  The facts of the Amended Complaint begin in 2013 when Plaintiff was criminally charged in state court, which resulted in incarceration with MDOC that began in January 2015.  *Id.* at 24 & 33.  Plaintiff was housed at multiple MDOC institutions in his first few years of incarceration, including Fulton Reception & Diagnostic Center, Jefferson City Correctional Center, and Southeast Correctional Center.  Eventually he was transferred to PCC – where he is now – around mid-to-late 2018.  *Id.* at 24-27.

In "Claim 1," Plaintiff asserts violations of the Eighth, Fourteenth, and First Amendments. *Id.* at 24-32.  He brings this claim against MDOC and "various [MDOC] staff" – which appears to include at least 17 of the named defendants.  The facts alleged in this claim range in time from

---

[1] Plaintiff filed an Amended Complaint in this matter (ECF No. 13) before the Court could rule his *in forma pauperis* motion and review his initial complaint (ECF No. 1) under 28 U.S.C. § 1915.  Because an amended pleading completely replaces the prior pleading, the Court will only discuss the allegations of the Amended Complaint.  *See, e.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005); *Yaritz v. Dep't of Corrs.*, No. 23-2457, 2024 WL 3218545, at *1 (8th Cir. June 28, 2024) (per curiam).

[2] Although Plaintiff states that he has had a case dismissed under the "three strikes rule," based on an independent review of federal court records, it appears that Plaintiff is not subject to the filing restrictions of 28 U.S.C. § 1915(g). *See* ECF No. 13 at 92.

[3] On November 15, 2021, Centurion Health became the medical services company contracted with MDOC to provide statewide correctional healthcare – including medical and mental health services for incarcerated people at 19 correctional facilities and 2 community transition centers across the state of Missouri.

approximately 2013 to 2019.  Plaintiff asserts incidents of failure to protect, due process violations, equal protection violations, conspiracy, violations of his right to free speech and access to the courts, and criminal negligence.  *Id.*  Generally, Plaintiff complains about his cell assignments in terms of who he is housed with, whether he was housed in administrative segregation or general population, and whether he was on protective custody status.  He admits that he was a member of the Family Values prison gang and he often assaulted inmates and made weapons on behalf of the gang.  *Id.* at 26-27.  He asserts that he was injured at the hands of many fellow inmates, blaming the assaults on MDOC defendants who assigned him to a particular cell, assigned him a particular cellmate, or told other inmates about his past.  *Id.* at 25, 27, 28-29.  Plaintiff states that he has both a "snitch jacket" and a "sex offender jacket" and that there is "general knowledge that snitches and sex offenders are at a heightened risk of being victims of physical/sexual assault."  *Id.* at 29-30.  Based on this "general knowledge," Plaintiff asserts that MDOC employees did not do enough to protect him from assault at the hands of other inmates, and instead forced him into "situations where [he had] no choice but to protect [himself] in equivalent to 'gladiator fighting.'"  *Id.* at 28.  Plaintiff claims that it was wrong to deny him protective custody based on him being found "too aggressive," when other violent, ex-gang members were granted such custody.  *Id.* at 28-30.

In "Claim 2," Plaintiff asserts claims under the Eighth Amendment for deliberate indifference and intentional infliction of emotional distress, and under the Fourteenth Amendment for violation of equal protection.  *Id.* at 33-50.  This count is brought against MDOC and "certain" PCC staff.  *Id.* at 33.  Around November or December 2021, Plaintiff alleges that defendants "negligently" chose an HIV-positive inmate, who also had genital warts, as Plaintiff's cellmate – given Plaintiff was a "known aggressive homosexual with previous PREA[4] incidents on [his] record."  *Id.* at 34.  According to Plaintiff, PCC staff should have known that there was a

---

[4] Prison Rape Elimination Act (PREA), 34 U.S.C. § 30301, *et seq.*

"substantial risk of [Plaintiff] sexually assaulting [his cellmate] and thus being exposed to [] HIV" and genital warts.  *Id.*  Plaintiff contends that PCC staff knew about and allowed sexual relations between Plaintiff and this inmate, which "jeopardized [his] life." *Id.* at 35.  Although Plaintiff has only tested "non-reactive" for HIV since these sexual relations, he alleges that PCC staff were deliberately indifferent to a substantial risk of harm and failed to protect both Plaintiff and all future cellmates of this HIV-positive inmate, from contracting HIV.  *Id.* at 37-38.  Plaintiff does allege that he contracted genital warts from this inmate.

Also asserted in this claim, Plaintiff states that he was raped and stabbed by another inmate in March 2023, which defendant correctional officer Batreal "personally witnessed" and "failed to intervene in." *Id.* at 40-41.  Plaintiff asserts that this rape was fulfillment of a threat by "staff" from 5 years earlier (2018), that Plaintiff would be raped. *Id.*  Plaintiff states that he was "emotionally distressed and psychologically traumatized" by the rape, and it resulted in him subsequently raping at least 5 of his future cellmates in a similar manner, in what Plaintiff calls an "institutional rape spree." *Id.* at 42-45.  Plaintiff asserts that defendants failed to protect other inmates from him and that his "uncontrollable sexual aggression problems" are a result of defendants' inaction. *Id.* at 45.

Furthermore, Plaintiff alleges that in the state of Missouri sexual offenders, like himself, are "deemed by law as having a mental disorder." *Id.* at 46.  Plaintiff claims that MDOC's failure to provide a treatment program, like MOSOP[5] at Farmington Correctional Center, for level 5[6] inmates like Plaintiff, constitutes deliberate indifference to his mental disorder and a violation of

---

[5] The Missouri Sex Offender Program (MOSOP) was designed for the "treatment, education, and rehabilitation [of] all imprisoned offenders who are serving sentences for sexual offenses" and MDOC requires completion of the program by sex offenders before they can be eligible for parole or conditional release.  *Reynolds v. Mo. Bd. of Prob. & Parole*, 468 S.W.3d 413, 418-19 (Mo. Ct. App. 2015).

[6] Plaintiff defines "level 5" as a class of inmates that includes inmates who were sentenced to life in prison, life without parole, or death.  ECF No. 13 at 46.

equal protection.  *Id.*  Finally, Plaintiff alleges that MDOC has a "common practice" of "failing to report PREA complaints."  *Id.* at 47.

In "Claim 3," Plaintiff states that he brings this count against "certain" PCC staff for violations of the First and Eighth Amendments.  *Id.* at 51-64.  Most of this claim seems to pertain to alleged acts of retaliation taken by many different defendants in response to Plaintiff filing grievance documents in September 2023.  In these grievances, Plaintiff confessed to multiple sexual assaults but also made accusations of misconduct against many defendants "in order to file a lawsuit."  *Id.* at 51-52.  After Plaintiff's grievance accusations, many PCC defendants were investigated and according to Plaintiff, at least one was discharged.  Plaintiff alleges that defendants retaliated against him for instigating the investigation and for his "intent" to file a lawsuit.  The alleged retaliatory acts include withholding Plaintiff's certified religious diet food tray; publicly disclosing information about Plaintiff which resulted in Plaintiff being labelled a snitch by other inmates; denying Plaintiff's spend requests for postage; denying Plaintiff's grievances as being filed out of time; and denying Plaintiff basic necessities like showers, nail clippers, mail, and a winter blanket.  *Id.* at 52-63.  Finally, Plaintiff also alleges that a defendant falsified documents to cover up the misconduct of other PCC staff.  *Id.* at 64.

In "Claim 4," Plaintiff alleges deliberate indifference to a medical need, medical malpractice, and professional misconduct, against healthcare provider Centurion and "certain" of its employees.  *Id.* at 65-71. Plaintiff explains that he first submitted a health service request about genital warts in December 2022.  *Id.* at 66.  At that time, he had 5 warts.  Plaintiff alleges multiple Centurion-employee defendants knew, or should have known, about his medical condition and failed to physically examine him or prescribe medication for it until July 2023.  By that time, Plaintiff had 30-40 warts that were larger in size.  Plaintiff alleges that this 7-month failure to treat his warts was deliberate indifference, on the part of both Centurion and its employee-defendants.

He also alleges that multiple defendants spoke openly about his medical condition in front of other inmates, in violation of his federal HIPAA[7] privacy rights. *Id.* at 66-67. According to Plaintiff, the 7-month delay in treatment resulted in a worsening of his condition, not just the large and size of warts, but also that he now must "be sent on medical outcount to receive treatment from an outside source" and his condition "can only be maintained instead of [] reduced." *Id.* at 68 & 70.

Although Plaintiff states that this claim is brought against Centurion and some of its employees, he also asserts numerous allegations regarding failure to respond to institutional grievances and a "common practice" of failure to respond to grievances within the 40-day time limit. *Id.* at 69-70. These accusations seem directed at PCC employees who handle grievance filings, not Centurion employees who handle health care.

In "Claim 5," Plaintiff asserts that health service requests and grievances filed in late 2023 were ignored by multiple defendants, in violation of a MDOC policy. *Id.* at 72-74. According to Plaintiff, under the MDOC policy, inmates who are "obvious victims of physical trauma" must be screened. *Id.* at 72. Plaintiff asserts that he requested such screening, approximately 7 months after he was allegedly raped, and he was denied it. Plaintiff asserts First and Eighth Amendment violations based on failures to respond to his grievances and failures to provide grievance appeals. *Id.* at 73.

As for injuries resulting from these 5 Claims, Plaintiff asserts that he suffered many physical injuries from attacks by fellow inmates, dating back to 2015. *Id.* at 76-78. He also asserts he contracted genital warts after being raped in 2023, and that the warts worsened due to a lack of medical care. *Id.* at 77. Plaintiff also experienced weight loss due to malnutrition after meals were withheld. *Id.* at 79. However, most of Plaintiff's alleged injuries are emotional and mental injuries. Plaintiff states that he has suffered from PTSD, anxiety, paranoia, distrust of correctional

---

[7] Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d-1, *et seq.*

staff, an "undiagnosed psychological condition known as gender dysphoria," "mental / emotional / psychological trauma," depression, night terrors, a "victim turned perpetrator psychological disorder," and ostracization from the inmate population. *Id.* at 77-81. Plaintiff asserts that his mental health problems have led to suicide attempts and self-destructive behaviors which have required correctional officer intervention, causing some physical injuries. *Id.* at 78. Plaintiff admits that he has received "intermittent counseling" and "mental health intervention" for treatment of his emotional conditions. *Id.* at 78-80.

For relief, Plaintiff seeks millions of dollars in actual and punitive damages, but also injunctive relief. *Id.* at 83-90. Plaintiff seeks classification as an administrative protective custody inmate and placement in a secure protective custody unit. *Id.* at 83 & 88-89. He also wants a specific inmate listed as his enemy, a MOSOP-type sex offender program for level 5 inmates, and a Court order requiring defendants to photograph and document the injuries he obtained relating to his PREA claims. *Id.* at 88-90.

Plaintiff attached over 150 pages of exhibits to his Amended Complaint. ECF No. 13-1. Many of the exhibits are grievance filings, letters to PCC staff regarding requests for copies of grievance filings or other requests for relief, copies of state court filings in Plaintiff's pending criminal cases, Institutional Violation Reports on Plaintiff, entries from a "MH Journal," a Qualified Legal Claim Verification Form, a personal letter written by Plaintiff to family, and Plaintiff's Declared Enemies list as of February 21, 2024. *Id.* Some of the pages of these exhibits are mostly unreadable. *See id.* at 28, 105, 138, 146.

Finally, on July 5, 2024, the Court received a Declaration from Plaintiff stating that he filed an 'Offender Statement' at PCC on June 30, 2024 – almost two months after the filing of the Amended Complaint – formally requesting protective custody. ECF No. 14.

## II.        Plaintiff's State-Court Litigation History

As discussed by Plaintiff in his pleadings, he was initially charged in 2013 in Missouri state court with second-degree murder, robbery, burglary, armed criminal action, and receiving stolen property.  *State v. Shattuck-Knaebel*, No. 15MG-CR00426 (26th Jud. Cir., 2013).  Plaintiff entered a guilty plea in May 2015, but he was later allowed to withdraw it.  Subsequently, in March 2016, Plaintiff entered an open plea to all the charges.  He was sentenced to life in prison plus 50 years.  Plaintiff's motion for post-conviction relief was denied in February 2019.  *Shattuck-Knaebel v. State*, No. 16MG-CC00035 (26th Jud. Cir., 2016).  That denial was affirmed on appeal in August 2020.  *Shattuck-Knaebel v. State*, No. WD82659 (W.D. Mo. Ct. App., 2019).

More recently, Plaintiff was charged in state court in two different cases based on incidents which allegedly occurred at Potosi Correctional Center.  In one case, Plaintiff was charged with eight counts of first-degree sodomy or attempted sodomy, regarding an incident from 2018.  *State v. Shattuck-Knaebel*, No. 23WA-CR00581-01 (24th Jud. Cir., 2023).  In another case, relating to an April 2023 incident, Plaintiff was charged with one count of first-degree sodomy or attempted sodomy; delivery or possession of a weapon at a correctional center; and armed criminal action.  *State v. Shattuck-Knaebel*, No. 23WA-CR00589-01 (24th Jud. Cir., 2023).  In March 2024, both cases were transferred to St. Francois County Circuit Court.  As of the date of this Order, both cases are still pending in that court.  *See State v. Shattuck-Knaebel*, No. 24SF-CR00387 (24th Jud. Cir., 2024); *State v. Shattuck-Knaebel*, No. 24SF-CR00385 (24th Jud. Cir., 2024).

## III.        Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-

pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## IV.    Discussion

Upon review of the Amended Complaint under 28 U.S.C. § 1915(e)(2), the Courts finds multiple legal deficiencies in the pleadings and a failure to comply with the Federal Rules of Civil Procedure. Even self-represented litigants are obligated to abide by the Federal Rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *see also Cody v. Loen*, 468 Fed. App'x. 644, 645 (8th Cir. 2012) (stating that a pro se litigant is not excused from Fed. R. Civ. P. 8, "which requires a short and plain statement showing the pleader is entitled to relief"). Furthermore, much of

Plaintiff's claims seem to relate to his desire to control who and where he is housed.  However, "[a]mong the liberties which prisoners do not enjoy is choice of cells.  Transfer within the prison, or to another prison, is within the discretion of prison officials."  *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984) (internal citations omitted); *see also Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (stating that prisoner plaintiffs "had no right … to be housed in a certain barrack or housing unit, or with certain inmates").

Nevertheless, because Plaintiff is self-represented and he has presented some serious allegations to the Court, he will be allowed to amend his pleadings in accordance with the instructions set forth below.  *See Munz v. Parr*, 758 F.2d 1254 (8th Cir. 1985) (discussing how a court should give a *pro se* plaintiff a statement of the complaint's deficiencies and a chance to amend the complaint).  Plaintiff should consider the following legal issues in filing his second amended complaint.

### a.  No Joinder of Unrelated Claims

The Amended Complaint is deficient because Plaintiff has inappropriately joined together unrelated claims.  Rule 20(a)(2) of the Federal Rules of Civil Procedure governs joinder of defendants, and provides:

> Persons . . .  may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

While joinder of claims, parties, and remedies are encouraged under the Federal Rules of Civil Procedure, permissive joinder is not applicable in all cases.  *Mosely v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).  Joinder requires that the asserted right to relief against each defendant must arise out of the same transaction or occurrence.  *Id*.  As such, a plaintiff cannot join, in a single lawsuit, multiple claims against different defendants related to events arising out

of different transactions or occurrences.  In other words: "Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Here, Plaintiff has attempted to join many unrelated claims.  For example, Plaintiff cannot bring in one lawsuit: claims against certain PCC employees for failing to protect him from sexual assault, claims against other PCC employees for retaliation related to the filing of grievances and threatened lawsuits, and claims against Centurion healthcare employees for deliberate indifference to a serious medical need.  These are unrelated claims that did not arise out of the same transaction or occurrence.  They need to be brought in separate lawsuits.  Plaintiff's second amended complaint should only bring related claims, arising out of the same transaction or occurrence.  Plaintiff must decide what claim or related claims he wishes to pursue in this lawsuit and seek relief on other unrelated claims in different suits.  Failure to comply with this Federal Rule will result in the dismissal or partial dismissal of this case.

**b.  Short and Plain Statement of Claim**

In addition, the Federal Rules of Civil Procedure require litigants to formulate their pleadings in an organized and comprehensible manner, setting out their alleged claims and the facts supporting those claims as to each defendant in a simple, concise, and direct manner.  *See* Fed. R. Civ. P. 8, 10.  Nowhere in the Amended Complaint does Plaintiff set forth a short and plain statement of what he claims entitles him to relief as required by Rule 8 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief").

Rather than provide a short and plain statement, Plaintiff's Amended Complaint is long, repetitive, and filled with irrelevant and extraneous information.  Plaintiff's failure to comply with Federal Rule 8 makes this action subject to dismissal.  *See Micklus v. Greer*, 705 F.2d 314, 317

n.3 (8th Cir. 1983); *White v. United States*, 588 F.2d 650, 651 (8th Cir. 1978) (affirming dismissal under Fed. R. Civ. P. 8(a) for a complaint described as unintelligible and a "wholly incomprehensible compilation of unrelated phrases, diatribes, and ramblings").

After Plaintiff decides which claim or related claims he wishes to pursue in this suit (based on Federal Rule 20(a)(2)), Plaintiff's second amended complaint should set out the claim(s) in a simple, concise, and direct manner, and the facts supporting the claim(s) as to each named defendant. *See* Fed. R. Civ. P. 8(a)(2) (complaint should contain short and plain statement of claims); 8(d)(1) (each claim shall be simple, concise, and direct); 10(b) (parties are to separate their claims within their pleadings and the contents of which shall be limited as far as practicable to a single set of circumstances).

### c.  Proper Defendants

According to the Eighth Circuit, "pro se status does not excuse [a plaintiff's] failure to name the proper parties." *Jackson v. Missouri Bd. of Prob. & Parole*, 306 F. App'x 333 (8th Cir. 2009).  In general, fictitious parties may not be named as defendants in a civil action.  *Phelps v. United States*, 15 F.3d 735, 739 (8th Cir. 1994).  An action may proceed against a party whose name is unknown, however, if the complaint makes sufficiently specific allegations to permit the identity of the party to be ascertained after reasonable discovery.  *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985).

In this case, Plaintiff names numerous Unknown defendants.  ECF No. 13 at 1-22.  Some of them have only vague job title descriptions like "Bed Broker at Southeast Correctional Center (2017)."  *Id.* at 1-3, 7.  Others have vague physical descriptions like "older one," "some big guy," or "unknown (Lady)."  *Id.* at 11, 15, 18.  Some are even less descriptive, where both the name and job title are unknown.  *Id.* at 20.

In addition, "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990), *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff).

As such, Plaintiff should only name defendants in his second amended complaint that are casually linked to, or directly responsible for, the deprivation of rights alleged in the claim(s) he has decided to pursue in this case. Plaintiff should only name Unknown defendants when he can make sufficiently specific allegations against them. Plaintiff cannot hold defendants liable simply because they held supervisory or administrative positions. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (claims sounding in respondeat superior are not cognizable under § 1983). For example, "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Reynolds v. Dormire,* 636 F.3d 976, 981 (8th Cir. 2011) (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam)).

### d.  Claims Plaintiff Should Not Pursue in his Second Amended Complaint

### i.  Claims that are Time-Barred

Because 42 U.S.C. § 1983 provides no specific statute of limitations period, the controlling limitation period is the most appropriate period provided by state law. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984) (citing *Johnson v. Ry. Express Agency*, 421 U.S. 454, 462 (1975); *Foster v. Armontrout*, 729 F.2d 583, 584 (8th Cir. 1984)). Section 1983 claims are analogous to personal injury claims and are therefore subject to Missouri's five-year statute of limitations. *Sulik v. Taney Cnty., Mo.*, 393 F.3d 765, 766-67 (8th Cir. 2005); Mo. Rev. Stat. § 516.120(4). "Although the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma

pauperis complaint under 28 U.S.C. § 1915[] when it is apparent the statute of limitations has run." *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992) (citations omitted).

In this case, Plaintiff's factual allegations begin in 2013 and his claims seems to relate back to his initial incarceration date in January 2015. ECF No. 13 at 24-27. Plaintiff's initial complaint in this matter was dated March 19, 2024. ECF No. 1 at 89. Based on a five-year statute of limitations for § 1983 claims, any of Plaintiff's claims which accrued before March 19, 2019, are time-barred. Many pages of Plaintiff's Amended Complaint appear to be alleging claims based on events before March 2019. *See* ECF No. 13 at 24-27, 30-1, 33-34, & 45. In addition, many of the defendants are named for events which occurred prior to March 2019. *See id.* at 1-4, 7 (naming defendants 2-8, 11, and 19-20 as pertaining to events which occurred between 2015 and 2018). As such, Plaintiff's second amended complaint should only assert claims that are not time-barred by the five-year statute of limitations period.

### ii.  Claims Brought on Behalf of Others

Standing is a jurisdictional requirement that can be raised by the court sua sponte at any time during the litigation. *Delorme v. U.S.*, 354 F.3d 810, 815 (8th Cir. 2004). Generally, to satisfy the standing requirement, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). A non-attorney, self-represented litigant (like Plaintiff) may not represent someone else in federal court. *See* 28 U.S.C. § 1654 (stating that in all United States courts, "the parties may plead and conduct their own cases personally or by counsel"); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (stating that "because *pro se* means to appear for one's self, a person may not appear on another's behalf in the other's cause. A person must be litigating an interest personal to him."); *Lewis v. Lenc–Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986) (stating that

non-lawyers may only represent themselves because "an individual may appear in the federal courts only *pro se* or through counsel.").

As related to this case, Plaintiff has no standing to bring claims on behalf of other prisoners. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). In other words, Plaintiff must allege a personal loss or injury, and he lacks standing to assert claims regarding the mistreatment of other inmates. For example, Plaintiff cannot bring a claim of failure to protect future cellmates of an inmate that Plaintiff considers dangerous, or a claim of failure to protect other inmates from Plaintiff himself. ECF No. 13 at 37, 45-48. Plaintiff's second amended complaint should only contain allegations concerning himself and should only assert claims on his own behalf.

### iii. Claims that have not been Exhausted

Pursuant to the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory for all suits about prison life, and it is a prerequisite to bringing a federal suit. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). This is true regardless of the relief offered by administrative procedures. *Booth v. Churner*, 532 U.S. 731, 741 (2001). "An inmate satisfies § 1997e(a) by pursuing 'the prison grievance process to its final stage' to 'an adverse decision on the merits.'" *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (quoting *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014)).

The Eighth Circuit has recognized that an inmate must exhaust administrative remedies before filing suit and has instructed that district courts look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). If a prisoner has not exhausted his administrative remedies at the time he files his civil action, dismissal is mandatory. *Id.* The PLRA's exhaustion requirement

applies to all inmate suits about prison life, like this one, so Plaintiff should only bring claims in his second amended complaint that he has exhausted through the grievance process.

### iv.  Claims based on a Violation of a MDOC Rule or Grievance Policy

It is well established that there is no federal constitutional liberty interest in having state officers follow state law or having prison officials follow prison regulations.  *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (*citing Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability).  Also, there is no federal constitutional right to a prison grievance procedure, and neither state law nor state policy creates one.  Therefore, if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim.  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (a prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983; grievance procedure is procedural right only and does not confer substantive right on inmate).  Furthermore, the guarantee of procedural due process under the Fourteenth Amendment applies only when a constitutionally protected liberty or property interest is at stake.  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972); *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) ("Due process protections extend only to deprivations of protected interests.").

Here, Plaintiff makes multiple complaints about named defendants failing to properly handle his grievance filings and failing to timely respond.  *See* ECF No. 13 at 55-56, 69, 73-74. Violations of a MDOC rule or grievance policy is not enough to state a claim against a defendant under § 1983.  In addition, a defendant's denial of a grievance filing also does not state a § 1983 claim.  *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the [constitutional] violations are responsible. ... Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.").  As such, Plaintiff should

not assert claims in his second amended complaint against defendants for a failure to follow a

MDOC rule or policy, nor claims against a defendant based on a grievance denial.

### v.  Claims based on a HIPAA Violation

Similarly, Plaintiff cannot assert an § 1983 claim based on an alleged violation of the

Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d-1, *et seq.*

Plaintiff asserts in his Amended Complaint that his right to medical privacy under HIPAA was

violated by multiple defendants.  *See* ECF No. 13 at 65-71.  However, HIPAA does not create a

private right of action that can be privately enforced either via a § 1983 claim or through implied

right of action.  *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 138-39 (8th Cir. 2009).   As

such, Plaintiff should not allege any claims based on HIPAA in his second amended complaint.

### vi.  Official Capacity Claims Against MDOC Employees

Plaintiff sues all defendants in their individual and official capacities.  ECF No. 13 at 1-22.

However, a "suit against a public employee in his or her official capacity is merely a suit against

the public employer."  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see*

*also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff

who sues public employees in their official, rather than individual, capacities sues only the public

employer"); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against

a public official in his official capacity is actually a suit against the entity for which the official is

an agent").

In this case, many of the defendants are PCC employees and therefore, employees of the

State of Missouri.  Plaintiff cannot bring a claim for damages against the State of Missouri under

§ 1983 because the State is not a "person."  *See Will v. Michigan Dep't of State Police*, 491 U.S.

58, 71 (1989) (asserting that "neither a State nor its officials acting in their official capacity are

'persons' under § 1983").  Furthermore, "[a] claim for damages against a state employee in his

- 18 -

official capacity is barred under the Eleventh Amendment." *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). As such, Plaintiff should not bring official capacity claims against MDOC employees for money damages in his second amended complaint.

## V.    Second Amended Complaint Instructions

Based on the guidance provided above, Plaintiff should file a second amended complaint in this matter. Plaintiff is advised that the filing of a second amended complaint **completely replaces** the original complaint, the amended complaint, and all supplements, and so it must include all claims Plaintiff wishes to bring. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect"). Any claims from the original or amended complaints, or any supplements, that are not included in the amended complaint will be deemed abandoned and will not be considered. *Id*. Plaintiff must **type or neatly print** the amended complaint on the Court-provided Prisoner Civil Rights Complaint form, and the amended complaint must comply with the Federal Rules of Civil Procedure. *See* E.D. Mo. L.R. 2.06(A). Plaintiff should fill out the complaint form in its entirety.

In the "Caption" section of the complaint form, Plaintiff must state the first and last name, to the extent he knows it, of the defendant or defendants he wants to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, Plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed. Plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both. Plaintiff should avoid naming anyone as a defendant unless that person is directly related to his claim(s).

In the "Statement of Claim" section, Plaintiff should begin by writing the first defendant's name. In separate, numbered paragraphs under that name, Plaintiff should set forth the specific

facts supporting his claim or claims against that defendant, as well as the constitutional right or rights that defendant violated.  If Plaintiff is suing more than one defendant, he should proceed in the same manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the factual allegations supporting his claim or claims against that defendant and the constitutional rights violated.  Plaintiff should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other.  *See* Fed. R. Civ. P. 20(a)(2).  Plaintiff's failure to make specific factual allegations against any defendant will result in that defendant's dismissal.  Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action."  *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

If Plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him.  *Madewell*, 909 F.2d at 1208.  It is not enough for Plaintiff to refer to a group of defendants and make general allegations against them.  Instead, Plaintiff must explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do.  *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim.").

If Plaintiff fails to file a second amended complaint on a Court-provided form within thirty (30) days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to Plaintiff.

## Motion for Injunctive Relief

### I.    Facts in Support of Immediate Relief

Plaintiff also filed a separation motion for a temporary restraining order.  ECF No. 7.  In this motion, Plaintiff alleges that he had an administrative segregation hearing on April 2, 2024,

in which he "voiced protective custody needs," that he alleges he had previously made aware to the Missouri Department of Corrections, as well as expressed in the pleadings in this matter. Despite Plaintiff's request, he claims that defendant Dement falsely wrote on the Classification Hearing Form, "Give me a celly or put me in the PRU program."[8]  *Id*. at 2.  When Plaintiff allegedly noted the falsification, a PCC staff member who is not a named defendant in this case said, "You [are] not going to our PC Unit. You killed a WWII veteran. You deserve whatever you get." *Id*.  Another PCC staff member – who is also not a named defendant in this case – made a threatening statement to Plaintiff.  As a result, Plaintiff alleges he signed the hearing form out of fear, and he then turned in the PRU application later that day, also out of fear.  *Id.*

Based on these events, Plaintiff claims that the administrative segregation hearing form from the April 2, 2024, hearing was falsified.  Plaintiff asserts that the document does not accurately reflect his request for protective custody and his number of "unwaived enemies."  *Id.* at 1-3.  Plaintiff admits to having filed multiple institutional grievances regarding this issue, just days before filing his motion, and that he is still awaiting a response.  *Id.* at 4.  However, he also attached grievance documents to the motion that are dated 11 months prior to the administrative segregation hearing at issue.  *See* ECF No. 7-1 at 13 (dated May 5, 2023).  Plaintiff also alleges that a PCC employee – who is not a named defendant in this case – is a threat to his safety.  ECF No. 7 at 5.

Finally, Plaintiff claims that staff is refusing to allow him access to the Protective Custody Unit at PCC.  Although he acknowledges that he currently has two enemies in the Protective Custody Unit at PCC, he still argues that he should be admitted to the Protective Custody Unit. *Id*. at 3-4.  Plaintiff asserts, without providing evidence, that one of his enemies has already signed a waiver stating that Plaintiff can be allowed into the Protective Custody Unit.  He then argues in

---

[8]Plaintiff does not explain the meaning of "PRU."

a conclusory manner that unnamed staff at PCC will not allow Plaintiff to submit a waiver regarding the other enemy. *Id* at 4. Plaintiff does not indicate if the last alleged enemy in the Protective Custody Unit has been contacted about waiving Plaintiff's entrance into the unit.

In his request for relief, Plaintiff seeks another hearing as soon as possible so that he may request Protective Custody. He states that he wants to know how many enemies he now has in the Protective Custody Unit at PCC. Plaintiff also asks for an Order from this Court to bar any defendants in this action from participating in his next hearing.

## II.    Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 27 (2008). In determining whether to grant a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015); *see also Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986).[9]

In the prison context, a request for injunctive relief must always be viewed with great caution because "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

---

[9] The same standards are applied to both a request for a preliminary injunction and a request for a temporary restraining order. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (affirming district court's application of *Dataphase* factors to a motion for a temporary restraining order).

For an injunction to issue, "a right must be violated," and the court must determine whether "a cognizable danger of future violation exists." *Id*. at 521. Furthermore, the "danger must be more than a mere possibility." *Id*. Regarding the issue of whether a situation is ripe for injunctive relief, the Eighth Circuit has noted that courts "should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Id*. Plaintiff has the burden of proving that an injunction should be issued. *See Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019).

### III. Discussion

After weighing the *Dataphase* factors listed above, the Court finds that Plaintiff has failed to demonstrate at this stage of the proceedings that he is likely to succeed on the merits of his claims and that he will suffer an immediate and irreparable injury if the requested relief is not granted. Plaintiff's statements seeking relief are wholly conclusory and lacking in any factual support. Plaintiff acknowledges that he has at least one or two enemies in the Protective Custody Unit at PCC, and he is therefore unable to enter the Protective Custody Unit at PCC as a result. Although Plaintiff is willing to waive those enemies, there is no indication or evidence that Plaintiff's current enemies in the Protective Custody Unit are willing to waive Plaintiff's entrance into the PC Unit with them. Plaintiff provides no evidence that his life is in imminent danger.

Furthermore, only one of persons named on the Classification Review Hearing Committee that purportedly barred Plaintiff from going to Protective Custody in April of 2024, is a named defendant in this lawsuit. The Court cannot issue injunctive relief against parties not named in this suit. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (explaining that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint").

Finally, the Court notes that Plaintiff's motion asks this Court to sit in review of decisions made by defendants regarding discipline and appropriate housing assignments, based on a desire to maintain safety and security at PCC. Although prisoners retain their constitutional rights, there are limitations on those rights "in light of the needs of the penal system." *Murphy v. Mo. Dep't of Corr.,* 372 F.3d 979, 982 (8th Cir. 2004). *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004). A prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Id.*; *see also Sandin v. Connor*, 515 U.S. 472, 482 (1995) (stating that "federal courts ought to afford appropriate deference and flexibility to state [prison] officials trying to manage a volatile environment."); *Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir. 1986) (stating that "prison administrators are accorded 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979))).

Despite plaintiff's assertions that defendants have denied his requests for the Protective Custody Unit based on their spitefulness, evidence provided by Plaintiff in his own exhibits shows that Plaintiff has numerous enemies and that he has been involved in several altercations and rapes of other inmates. Plaintiff's allegations regarding defendants are speculative and insufficient to draw the inference that defendants had any hidden animus behind their housing assignment decisions. *See Iqbal*, 556 U.S. at 678 (finding that a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Court is unpersuaded that the Classification Hearing Review team is doing anything besides trying to maintain a safe facility.

For all these reasons, the Court declines to grant Plaintiff the immediate request for a new Classification Hearing or order officials at PCC to provide Plaintiff with new documents showing the current number of enemies in the Protective Custody Unit. His motion for temporary restraining order is denied.

### Appointment of Counsel

Finally, Plaintiff has filed a motion for appointment of counsel. ECF No. 3. In civil cases, a self-represented litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013); *see also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim … and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the self-represented litigant to investigate the facts, the existence of conflicting testimony, and the ability of the self-represented litigant to present his or her claim. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

In this case, there is no indication that Plaintiff is incapable of representing himself, and nothing in the pleadings or in the record before the Court evidence that the factual or legal issues are sufficiently complex to justify the appointment of counsel. The action appears to involve straightforward questions of fact rather than complex questions of law. Further, the request for counsel is premature, as defendants have not yet been served, and the Court has not issued any Case Management Order. The Court concludes that the appointment of counsel would not be of

sufficient benefit to the Court or to Plaintiff at this time, and will deny Plaintiff's motion for appointment of counsel, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 2] is **GRANTED.** *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $43.82 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding. *See* 28 U.S.C. § 1915(b)(1).

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to Plaintiff a blank copy of the Court's Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that, within **thirty (30) days** of the date of this Order, Plaintiff shall file a second amended complaint on the Court-provided form and in compliance with the Court's instructions.

**IT IS FURTHER ORDERED** that upon submission of the second amended complaint, the Court shall again review this action pursuant to 28 U.S.C. §1915.

**IT IS FURTHER ORDERED** that Plaintiff's request for temporary restraining order [ECF No. 7] is **DENIED without prejudice**.

**IT IS FINALLY ORDERED** that Plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED without prejudice**.

**Plaintiff's failure to timely comply with this Order shall result in the dismissal of this action, without prejudice and without further notice.**

Dated this 16th day of July, 2024.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE