# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES D. SHATTUCK-KNAEBEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-454 HEA |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

Self-represented Plaintiff Charles Shattuck-Knaebel brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. After the Court directed Plaintiff to file a second amended complaint on July 16, 2024, Plaintiff filed a motion to voluntarily dismiss this action. ECF Nos. 15-16. However, after the Court granted that motion and dismissed the case, Plaintiff asked to withdraw it and reopen the case. ECF Nos. 17-19. For just cause, the Court reopened the case and now before the Court are Plaintiff's Second Amended Complaint (ECF No. 25), second Motion for Temporary Restraining Order (ECF No. 26), and a Motion to Compel (ECF No. 29).

As Plaintiff is proceeding *in forma pauperis* in this matter, the Court must review his Second Amended Complaint under 28 U.S.C. § 1915. Based on such review, the Court will issue process on Plaintiff's claim of failure to protect in violation of the Eighth Amendment against correctional officer Unknown Batreal, in his individual capacity. The Court will sever Plaintiff's claim of First Amendment retaliation against correctional officer Justin Conway, based on misjoinder, under Federal Rule of Civil Procedure 21. All other claims and defendants will be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

In addition, Plaintiff's second motion for a temporary restraining order will be denied, as it is seeking immediate relief based on incidents that have occurred at Plaintiff's new place of incarceration, and the substance of the motion is not related to the claims before the Court in this case. Finally, Plaintiff's motion to compel will be denied as moot.

## Background

### I.    Prior Complaints and Exhibits[1]

Plaintiff[2] is a convicted and sentenced state-court prisoner complaining about incidents which occurred while he was confined at Potosi Correctional Center (PCC), a Missouri Department of Corrections (MDOC) facility. ECF No. 13 at 2. He originally brought this § 1983 action against sixty-five (65) defendants including MDOC, fifty-four (54) MDOC employees, Centurion,[3] and nine (9) Centurion employees. ECF No. 13 at 1-22. All defendants were named in both their individual and official capacities. *Id.*

Plaintiff's 50-page Statement of Claim in his Amended Complaint is long, disjointed, repetitive, and contains unrelated claims. *Id.* at 24-74. Although Plaintiff divides his allegations into five (5) "Claim[s]," each "Claim" contains numerous unconnected allegations and defendants. The facts of the Amended Complaint began in 2013 when Plaintiff was criminally charged in state court, resulting in incarceration with MDOC that began in January 2015. *Id.* at 24, 33. Plaintiff

---

[1] For a complete summary of all allegations raised in Plaintiff's Amended Complaint, see the Court's prior Order dated July 16, 2024. ECF No. 15. This section focuses on allegations which are also raised in Plaintiff's Second Amended Complaint.

[2] Although Plaintiff states that he has had a case dismissed under the "three strikes rule," based on an independent review of federal court records, it appears that Plaintiff is not subject to the filing restrictions of 28 U.S.C. § 1915(g). *See* ECF No. 25 at 48.

[3] Centurion Health is the medical services company contracted with MDOC to provide statewide correctional healthcare – including medical and mental health services for incarcerated people at 19 correctional facilities and 2 community transition centers across the state of Missouri.

was housed at multiple MDOC institutions in his first few years of incarceration, until he was transferred to PCC around mid-to-late 2018. *Id.* at 24-27.

In his Claims, Plaintiff asserts violations of the First, Eighth, and Fourteenth Amendments based on alleged incidents of failure to protect, intentional infliction of emotional distress, due process violations, equal protection violations, conspiracy, violations of his right to free speech and access to the courts, and criminal negligence. *Id.* at 24-74. Generally, Plaintiff complains about his cell assignments in terms of who he is housed with, whether he was housed in administrative segregation or general population, and whether he was on protective custody status. He admits that he was a member of the Family Values prison gang and he often assaulted inmates and made weapons on behalf of the gang. *Id.* at 26-27. He asserts that he was injured at the hands of many fellow inmates, blaming the assaults on MDOC defendants who assigned him to a particular cell, assigned him a particular cellmate, or told other inmates about his past. *Id.* at 25, 27, 28-29. Plaintiff states that he has both a "snitch jacket" and a "sex offender jacket" and that there is "general knowledge that snitches and sex offenders are at a heightened risk of being victims of physical/sexual assault." *Id.* at 29-30. Based on this "general knowledge," Plaintiff asserts that MDOC employees did not do enough to protect him from assault at the hands of other inmates, and instead forced him into "situations where [he had] no choice but to protect [himself] in equivalent to 'gladiator fighting.'" *Id.* at 28. Plaintiff claims that it was wrong to deny him protective custody based on him being found "too aggressive," when other violent, ex-gang members were granted such custody. *Id.* at 28-30.

Plaintiff also alleges MDOC "negligently" placed him in a cell with an HIV-positive inmate (who also had genital warts), despite Plaintiff being a "known aggressive homosexual with previous PREA[4] incidents on [his] record." *Id.* at 34. Plaintiff contends that PCC staff knew about

---

[4] Prison Rape Elimination Act (PREA), 34 U.S.C. § 30301, *et seq.*

and allowed sexual relations between Plaintiff and this inmate, which "jeopardized [his] life." *Id.* at 35. Although Plaintiff has only tested "non-reactive" for HIV since these sexual relations, he alleges that PCC staff were deliberately indifferent to a substantial risk of harm and failed to protect both Plaintiff and all future cellmates of this HIV-positive inmate, from contracting HIV. *Id.* at 37-38. Plaintiff does allege that he contracted genital warts from this inmate.

In addition, Plaintiff states that he was raped and stabbed by an inmate named Driskill in March 2023, which defendant correctional officer Batreal "personally witnessed" and "failed to intervene in." *Id.* at 40-41. Plaintiff asserts that this rape was fulfillment of a threat by "staff" from five (5) years earlier (2018), that Plaintiff would be raped. *Id.* Plaintiff states that he was "emotionally distressed and psychologically traumatized" by the rape, and it resulted in him subsequently raping at least five (5) of his future cellmates in a similar manner, in what Plaintiff calls an "institutional rape spree." *Id.* at 42-45. Plaintiff asserts that defendants failed to protect other inmates from him and that his "uncontrollable sexual aggression problems" are a result of defendants' inaction. *Id.* at 45.

Furthermore, Plaintiff alleges that in the state of Missouri sexual offenders, like himself, are "deemed by law as having a mental disorder." *Id.* at 46. Plaintiff claims that MDOC's failure to provide a treatment program, like MOSOP[5] at Farmington Correctional Center, for level 5[6] inmates like Plaintiff, constitutes deliberate indifference to his mental disorder and a violation of equal protection. *Id.* Plaintiff also alleges that MDOC has a "common practice" of "failing to report PREA complaints." *Id.* at 47.

---

[5] The Missouri Sex Offender Program (MOSOP) was designed for the "treatment, education, and rehabilitation [of] all imprisoned offenders who are serving sentences for sexual offenses" and MDOC requires completion of the program by sex offenders before they can be eligible for parole or conditional release. *Reynolds v. Mo. Bd. of Prob. & Parole*, 468 S.W.3d 413, 418-19 (Mo. Ct. App. 2015).

[6] Plaintiff defines "level 5" as a class of inmates that includes inmates who were sentenced to life in prison, life without parole, or death. ECF No. 13 at 46.

In terms of injuries, Plaintiff states that he has suffered from PTSD, anxiety, paranoia, distrust of correctional staff, an "undiagnosed psychological condition known as gender dysphoria," "mental / emotional / psychological trauma," depression, night terrors, a "victim turned perpetrator psychological disorder," and ostracization from the inmate population. *Id.* at 77-81. Plaintiff admits that he has received "intermittent counseling" and "mental health intervention" for treatment of his emotional conditions. *Id.* at 78-80.

Plaintiff attached over 150 pages of exhibits to his Amended Complaint. ECF No. 13-1. Many of the exhibits are grievance filings, letters to PCC staff regarding requests for copies of grievance filings or other requests for relief, copies of state court filings in Plaintiff's pending criminal cases, Institutional Violation Reports on Plaintiff, entries from a "MH Journal," a Qualified Legal Claim Verification Form, a personal letter written by Plaintiff to family, and Plaintiff's Declared Enemies list as of February 21, 2024. *Id.* Many of these exhibits are predominantly unreadable. *See id.* at 28, 105, 138, 146.

## II.    Plaintiff's State-Court Litigation[7]

As discussed by Plaintiff in his pleadings, he was initially charged in 2013 in Missouri state court with second-degree murder, robbery, burglary, armed criminal action, and receiving stolen property. *State v. Shattuck-Knaebel*, No. 15MG-CR00426 (26th Jud. Cir., 2013). Plaintiff entered a guilty plea in May 2015, but he was later allowed to withdraw it. Subsequently, in March 2016, Plaintiff entered an open plea to all the charges. He was sentenced to life in prison plus 50 years. Plaintiff's motion for post-conviction relief was denied in February 2019. *Shattuck-Knaebel v. State*, No. 16MG-CC00035 (26th Jud. Cir., 2016). That denial was affirmed on appeal in August 2020. *Shattuck-Knaebel v. State*, No. WD82659 (W.D. Mo. Ct. App., 2019).

---

[7] The Court may take judicial notice of public records when reviewing a complaint. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

More recently, Plaintiff was charged in state court in two different cases based on incidents which allegedly occurred at PCC. In one case, Plaintiff was charged with eight counts of first-degree sodomy or attempted sodomy, regarding an incident from 2018. *State v. Shattuck-Knaebel*, No. 23WA-CR00581-01 (24th Jud. Cir., 2023). In another case, relating to an April 2023 incident, Plaintiff was charged with one count of first-degree sodomy or attempted sodomy; delivery or possession of a weapon at a correctional center; and armed criminal action. *State v. Shattuck-Knaebel*, No. 23WA-CR00589-01 (24th Jud. Cir., 2023). In March 2024, both cases were transferred to St. Francois County Circuit Court. As of the date of this Order, both cases are still pending in that court. *See State v. Shattuck-Knaebel*, No. 24SF-CR00385 (24th Jud. Cir., 2024); *State v. Shattuck-Knaebel*, No. 24SF-CR00387 (24th Jud. Cir., 2024).

## III.    Review of Plaintiff's Amended Complaint under § 1915

On July 16, 2024, the Court issued a lengthy and detailed Order explaining the deficiencies in Plaintiff's Amended Complaint and directing him to file a second amended complaint in compliance with the Court's instructions. ECF No. 15. The Court also denied Plaintiff's motions for temporary retraining order and for appointment of counsel. *Id.* After multiple extensions of time and the closing and reopening of this matter, Plaintiff has now filed a Second Amended Complaint for the Court's review under § 1915.

### § 1915 Review of Plaintiff's Second Amended Complaint

## I.    Allegations of the Second Amended Complaint

Plaintiff is no longer confined at PCC; he has been transferred to Eastern Reception Diagnostic and Correctional Center (ERDCC). ECF No. 24. However, all his claims relate to his period of incarceration at PCC.[8] ECF No. 25 at 3. Plaintiff's Second Amended Complaint names

---

[8] On October 17, 2024, the Court received a "Declaration" from Plaintiff complaining about his transfer to ERDCC, the health care he has received at ERDCC in August and September 2024, and his most recent administrative

twenty-two (22) defendants and brings seven (7) claims.  The defendants include the Missouri Department of Corrections (MDOC) and twenty-one (21) PCC employees: Steven Francis (functional unit manager (FUM)); Jennifer Currie (assistant warden); Joshua Browers (bed broker); Shiloh Miller (correctional officer (CO)); Unknown Pull (CO); Derrik Barker (FUM); David Vandergriff (warden); Unknown Adams (captain); Justin Conway (CO); Danny Francis (PREA Coordinator); B. Brown (CO); Unknown Gutchess (CO); Brian Davis (FUM/bed broker); Unknown Brown (captain); Perry Arnold (CO); Caleb Thompson (CO); Unknown Batreal (CO); Matthew Barton (CO); Nicholas Skaggs (CO); Unknown Warden (in 2018 and 2019); and Unknown Bed Broker (in 2018).  *Id.* at 1-11.  Plaintiff sues defendants MDOC, Currie, Browers, and Miller in both their individual and official capacities, but all other defendants are named in their individual capacities only.  *Id.*

In Claim 1, Plaintiff asserts an Eighth Amendment failure-to-protect claim against defendants Steven Francis, Jennifer Currie (previously known as Jennifer Price), Joshua Browers, and the PCC Warden in October 2018.  *Id.* at 12-14.  Plaintiff states that soon after his transfer to PCC he was beat "half to death" by his cellmate.  *Id.* at 12.  Plaintiff alleges defendants should have known not to place Plaintiff in a cell with a member of his ex-gang because Plaintiff had been transferred to PCC to get away from members of his ex-gang.  *Id.* at 12-13.  In terms of injuries resulting from this October 2018 attack from his cellmate, Plaintiff states he suffered a broken nose, black eyes, contusions, abrasions, mild concussion, and psychological trauma.  *Id.* at 14, 42.

In Claim 2, Plaintiff brings an Eighth Amendment failure-to-protect claim and a Fourteenth Amendment procedural-due-process claim against defendants Shiloh Miller, Unknown Pull,

---

segregation hearing at ERDCC.  ECF No. 31.  Because this case only involves Plaintiff's time of incarceration at PCC, the allegations of this Declaration will not be discussed or considered.

Derrik Barker, and the PCC Warden in April 2019.[9]  *Id.* at 15-18.  Plaintiff alleges that because of his cell placement by Miller and Pull, Plaintiff was put in a cell with an inmate who "attempted to stab" Plaintiff but Plaintiff "disarmed him and stabbed him with his own shank in an act of self-defense."  *Id.* at 15.  Plaintiff alleges Miller and Pull failed to protect him, defendant Barker expunged his conduct violation regarding this incident "in an attempt to cover up staff's failure to protect," and the PCC Warden failed to train staff properly.  *Id.* at 16.  In terms of injuries related to this claim, Plaintiff states that he suffered "discomfort from … a chemical agent in [his] eyes," a cut on his hand from disarming his cellmate, PTSD, anxiety, paranoia, and distrust of correctional staff.  *Id.* at 18, 42.

In Claim 3, Plaintiff asserts Eighth Amendment failure-to-protect and Fourteenth Amendment equal protection claims against defendant MDOC.  *Id.* at 19-21.  Plaintiff complains about being "continually denied" protective custody (PC) placement.[10]  *Id.* at 20.  Plaintiff states that he has been told that he is "too aggressive" and that his violent "institutional conduct history" prevents him from being granted PC status.  *Id.* at 19.  Instead, Plaintiff states that MDOC "[t]ypically" places him in a single-man cell in the administrative segregation unit.  *Id.* at 20. According to Plaintiff, he knows of two other inmates who are similarly situated—in that they are "established dangerous" offenders, they are ex-prison gang members, and they have either a snitch or sex offender "jacket"—but they have been granted PC status.  *Id.* at 19-20.  Plaintiff admits that

---

[9] 'PCC Warden in October 2018' appears to be the same defendant as 'PCC Warden in April 2019' as Plaintiff describes this defendant #21 as "Unknown PCC Warden 2018 2019."  ECF No. 25 at 2, 11.

[10] The Court recognizes that Plaintiff has another § 1983 lawsuit currently pending in this Court: *Shattuck v. Lewis*, No. 4:24-cv-336-HEA (E.D. Mo. filed Mar. 4, 2024). *See Stutzka v. McCarville*, 420 F.3d 757, 760 n. 2 (8th Cir. 2005) (discussing how the Court may take judicial notice of judicial opinions and public records.).  In his filings for that other matter, Plaintiff describes an incident that occurred sometime around July 2022 where he was brought back to his cell from medical and the escorting correctional officer asked him if he needed PC placement.  Plaintiff told him no.  *Id.* at ECF No. 1 at 8.  Based on this admission, at least once in his past, Plaintiff has himself denied PC placement.  In his Claim 3 allegations, Plaintiff does not provide specifics as to when exactly he requested and was denied PC placement by MDOC.

MDOC has transferred him to different facilities multiple times to try to "secure his safety and well being." *Id.* at 20. As a result of denial of PC placement, Plaintiff alleges he has suffered multiple assaults from other inmates, psychological trauma from long-term solitary confinement, sleep deprivation, migraines, and social anxiety. *Id.* at 21, 44.[11]

In Claim 4, Plaintiff brings multiple allegations against defendants B. Brown, Unknown Gutchess, Brian Davis, Captain Unknown Brown, Perry Arnold, Nicholas Skaggs, Caleb Thompson, Unknown Batreal, Captain Unknown Adams, Warden David Vandergriff, and PREA Coordinator Danny Francis. *Id.* at 22-28. Around March 2023, Plaintiff asserts that defendants started informing the inmate population at PCC that Plaintiff had snitched in his criminal case, on administrative segregation workers, and on other inmates. Around this same time, Plaintiff was moved to a double-man cell with inmate Jesse Driskill. *Id.* at 22. Plaintiff describes Driskill as a "convicted sex offender, death-row inmate and a known affiliate of Family Values." *Id.* at 23. When Plaintiff was moved into the cell with Driskill, he claims that a non-defendant correctional officer informed Driskill that Plaintiff was a "rat." *Id.* at 24. After the correctional officer left the cell, Plaintiff questioned Driskill on whether they would have problems based on that information. According to Plaintiff, Driskill told him that "he wasn't worried about none of that [and] he just wanted to get high." Plaintiff states that they got high on K2 "off and on for a few days." *Id.*

A few days later when Driskill was escorted back to their cell by defendant CO Thompson, Thompson informed Driskill in front of Plaintiff that Plaintiff was not to be trusted and that he had snitched on others. Plaintiff states that he "brushed off" those statements and did not anticipate any issues with Driskill as they had not been having any problems as cellmates. Plaintiff and

---

[11] Plaintiff does not appear to have ordered the 'Injuries' section of his Second Amended Complaint in the same order as his seven Claims. ECF No. 25 at 42-44. Although numbers 1 and 2 under 'Injuries' do appear to correspond to Claims 1 and 2, the allegations against MDOC in Claim 3 appear to correspond to the injuries listed under number 6. *Id.*

Driskill then got high on Fentanyl, allegedly provided to Driskill by CO Thompson. After Plaintiff passed out, he states that he woke up later to Driskill raping him with a knife to his throat. *Id.* Plaintiff resisted and was stabbed multiple times by Driskill. *Id.* at 25.

According to Plaintiff, while Driskill was raping him, defendant CO Unknown Batreal passed by their cell while doing rounds and "personally witnessed [Plaintiff] being actively raped." Plaintiff states that he was bleeding and screaming for help but Batreal "failed to intervene in any way" and "let Driskill finish." *Id.* Then Batreal told Plaintiff to clean himself up and he would pull Plaintiff out of the cell. On his next round, Batreal let Plaintiff "PC from the cell." Plaintiff alleges that Batreal's actions violated his Eighth Amendment rights as he witnessed the rape and failed to protect Plaintiff. *Id.*

Plaintiff also alleges that defendants B. Brown, Unknown Gutchess, Brian Davis, Captain Unknown Brown, Nicholas Skaggs, Perry Arnold, Captain Unknown Adams, and Caleb Thompson violated his Eighth Amendment rights by placing him in a cell with Driskill, failing to protect him from assault, and informing other inmates he was a snitch. *Id.* at 26. Plaintiff alleges that Brian Davis was the bed broker who assigned him to a cell with Driskill. *Id.* at 27. As for Warden Vandergriff and PREA Coordinator Francis, Plaintiff alleges they failed to properly train PCC staff on safely assigning cells based on protective custody needs and proper processing of PREA reports. *Id.* Plaintiff states that his injuries associated with Claim 4 include: psychological torture and trauma, sleep deprivation, emotional distress, suicidal tendencies, multiple stab wounds, anal rape causing rectum tear, PTSD, night terrors, anxiety, paranoia, distrust of correctional officers, depression, "victim turned perpetrator psychological disorder," and gender dysphoria. *Id.* at 28, 42-43.

In Claim 5, Plaintiff asserts that his emotional and psychological trauma from being raped caused "uncontrollable sexual aggression" which resulted in Plaintiff sexually assaulting his next

five (5) cellmates—in what Plaintiff calls an "institutional rape spree." *Id.* at 29-34. Plaintiff alleges MDOC failed to protect him from himself by being deliberately indifferent to his sexual aggression problems and his severe mental health needs. *Id.* at 33. Plaintiff asserts that MDOC should implement a treatment program, like MOSOP offered at Farmington Correctional Center, for level 5 inmates like him. He alleges that the lack of such program has violated his equal protection rights and resulted in a failure to protect him. *Id.* at 33-34. Plaintiff states that his injuries from these failures have been sleep deprivation and psychological trauma. *Id.* at 43.

In Claim 6, Plaintiff seems to reassert allegations he made in Claim 4 against Warden David Vandergriff and PREA Coordinator Danny Francis regarding their alleged failure to properly train PCC staff on "how to ensure proper progressing of reporting PREA complaints and how to properly process or otherwise prevent likely PREA incidents." *Id.* at 35. Plaintiff states that PCC staff "make a common practice of failing/refusing to report or otherwise process PREA complaints." *Id.* at 36-37. In support of this claim, Plaintiff makes allegations on behalf of other inmates concerning defendants' failures to properly handle their rape accusations against Plaintiff. *Id.* at 37-38. In addition, he states that the lack of conduct violations in his institutional record provides evidence of "professional misconduct and criminal negligence … in relation to the common practice of failing to report PREA complaints constituting a violation regarding Warden Vandergriff's failure to train." *Id.* at 39. Plaintiff alleges that because of these actions, he has suffered "mental and emotional anguish." *Id.*

In Claim 7, Plaintiff alleges that in October 2023 CO Justin Conway disclosed information about Plaintiff—loud enough for the entire prison unit to hear—in retaliation for Plaintiff listing Conway's name "in reference to" a PREA claim that resulted in Conway being subjected to investigation. *Id.* at 40. Plaintiff asserts that Conway told his unit that Plaintiff had snitched on multiple inmates at PCC and had snitched against a codefendant in his initial criminal case.

- 11 -

According to Plaintiff, release of this information created a "heightened risk of harm" to him, but Plaintiff does not actually allege any physical injury resulting from the statements. *Id.*

In terms of relief on all these Claims, Plaintiff seeks six (6) million dollars in damages. He also requests injunctive relief of being "single cell mandated and to receive [his] JPAY tablet in that single man cell" so that he "can do the MOSOP program and access all other available apps." *Id.* at 45.

## II.    Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## III.    Discussion

Upon review of the Second Amended Complaint[12] under 28 U.S.C. § 1915(e)(2), the Courts finds many legal deficiencies in the pleadings and a failure to comply with the Federal Rules of Civil Procedure.  As discussed in the Court's prior Order (ECF No. 15), even self-represented litigants are obligated to abide by the Federal Rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993).  The Court warned Plaintiff that, based on Federal Rule 20, he can only assert in a single lawsuit, claims against different defendants that are based on events arising out of the same transaction, occurrence, or series of transactions or occurrences.  Fed. R. Civ. P. 20(a)(2)(A); *Mosely v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (joinder requires that a plaintiff only assert rights to relief against each named defendant based on claims that arise out of the same transaction or occurrence).

In his Second Amended Complaint, Plaintiff brings lengthy allegations against twenty-two (22) different defendants based on various unrelated incidents and occurrences.  Plaintiff's allegations include claims about his cell assignment, failure to protect, failure to report prison grievances and complaints, failure to train, failure to provide adequate mental health services, and retaliation.  These claims are against various defendants and do not arise out of the same

---

[12] Because an amended pleading completely replaces the prior pleading, the Court will only discuss the allegations of the Second Amended Complaint. *See, e.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005); *Yaritz v. Dep't of Corrs.*, No. 23-2457, 2024 WL 3218545, at *1 (8th Cir. June 28, 2024) (per curiam).

transactions or occurrences.  The Court cautioned Plaintiff about the requirement that he comply with the Federal Rules, and he has had multiple opportunities to amend his pleadings.

As such, based on a careful review and liberal construction of the Second Amended Complaint, the Court finds that Plaintiff has provided sufficient factual allegations against correctional officer Unknown Batreal—concerning Batreal witnessing and failing to intervene while Plaintiff was being raped—to issue on Plaintiff's Eighth Amendment claim of failure to protect against Batreal, in his individual capacity.

Plaintiff's Second Amended Complaint also asserts a factually supported claim of First Amendment retaliation against correctional officer Justin Conway.  However, this claim is unrelated to the failure-to-protect claim against Batreal and should not be brought in the same suit. As such, Plaintiff's First Amendment retaliation claim against Conway (Claim 7) will be severed and dismissed from this suit.  If Plaintiff wishes to pursue this claim, he must do so in a separate lawsuit.  All of Plaintiff's other claims and the other defendants listed in the Second Amended Complaint are subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).

### A.  Dismissal of Official Capacity Claims, Claim 3, and Claim 5

As discussed in detail below, official capacity claims against MDOC employees are the same as claims brought against MDOC itself.  However, as an agency of the State of Missouri, MDOC is not suable under § 1983 for money damages.  In addition, the State of Missouri is protected by immunity.  As such, these claims are subject to dismissal.

Furthermore, as to Plaintiff's request for injunctive relief regarding his cell assignment, "[a]mong the liberties which prisoners do not enjoy is choice of cells.  Transfer within the prison, or to another prison, is within the discretion of prison officials."  *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984) (internal citations omitted); *see also Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (stating that prisoner plaintiffs "had no right … to be housed in a certain barrack or

housing unit, or with certain inmates"). Moreover, to the extent Plaintiff seeks relief of a single-man cell assignment based on his allegations concerning incidents which occurred at PCC, this relief is mooted by his transfer to ERDCC.

> i. **Official Capacity claims must be dismissed because the State of Missouri is protected by immunity from damages relief and not suable under § 1983**

Plaintiff names defendants MDOC and three (3) MDOC-employee defendants (Currie, Browers, and Miller) in their official capacities as well as their individual capacities. However, a suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, an official-capacity suit generally represents a "way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

MDOC is an agency of the State of Missouri, and the State of Missouri is not a "person" for purposes of § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 64 (1989). In addition, the Eleventh Amendment[13] bars suit against a State and its agencies. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *see also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court."). "A claim for damages against a state

---

[13] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

employee in his official capacity is barred under the Eleventh Amendment." *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). As such, Plaintiff's official capacity claims must be dismissed because the State of Missouri is protected by immunity and not suable under § 1983.

> ii. **Claim 3 must be dismissed because MDOC is protected by immunity from damages relief and any injunctive relief claim is mooted by facility transfer**

Plaintiff brings his Claim 3 against defendant MDOC only. ECF No. 25 at 21. As discussed above, because the State of Missouri is protected by immunity and not a person under § 1983, Claim 3's request for damages is subject to dismissal.

Moreover, to the extent Plaintiff is seeking injunctive relief regarding his PC placement at PCC, this claim is now moot because Plaintiff has been transferred to ERDCC. The Eighth Circuit has consistently held that a prisoner's transfer to a different facility where the alleged unlawful conduct does not exist, renders moot a prisoner's request for injunctive relief. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (dismissed as moot prisoner plaintiff's claim for injunctive relief to improve prison conditions because plaintiff was transferred to a different unit); *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978) (prisoner's transfer to a different state penitentiary rendered moot his claim for injunctive relief). Because Plaintiff here has been transferred to ERDCC and he makes no allegations regarding PC status at ERDCC, his request for injunctive relief regarding a "single cell mandate"[14] is moot. Claim 3 will be dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B).

---

[14] Plaintiff admits that MDOC "[t]ypically" puts him in a "single man cell." ECF No. 25 at 20. As such, to the extent Plaintiff is requesting some kind of order or "mandate" from this Court that he always and forever be placed in a single man cell for the rest of his incarceration with the MDOC, this request fails. As discussed above, Plaintiff has no liberty interest in choosing his cell assignment. Also, the Court defers to prison authorities on matters of safety and security. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (discussing how deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security). Furthermore, given that Plaintiff has requested a two-man cell as recently as August 2022 due to his "mental health status needs," this issue is best decided by prison administration. *See Shattuck v. Lewis*, No. 4:24-cv-336-HEA, ECF No. 1-1 at 2.

### iii.    Claim 5 must be dismissed because MDOC is protected by immunity from damages relief, and it is not responsible for Plaintiff's mental health care

Similarly, Plaintiff brings Claim 5 against defendant MDOC only.  ECF No. 25 at 33-34.  Because the State of Missouri is not a person under § 1983 and it is protected by immunity from Plaintiff's allegations, Plaintiff's request for compensatory damages under Claim 5 must be dismissed.

In addition, as discussed in the Court's prior Order, MDOC is not the health services provider for Plaintiff while incarcerated.  As of November 15, 2021, MDOC contracted with Centurion Health to provide statewide correctional healthcare—including medical and mental health services—for incarcerated people at MDOC institutions statewide.  *See* Centurion Health News,    https://www.centurionmanagedcare.com/newsroom/centurion-health-begin-correctional-health-contract-for-missouri-department-of-corrections.html    (last    visited    Oct.    22,    2024).  Plaintiff's mental health services are the responsibility of Centurion Health, who is not a named defendant in the Second Amended Complaint.  As such, to the extent that Plaintiff complains about the lack of treatment for prisoners with mental disorders,[15] this claim cannot be brought against MDOC.  According to the Eighth Circuit, "pro se status does not excuse [a plaintiff's] failure to name the proper parties."  *Jackson v. Missouri Bd. of Prob. & Parole*, 306 F. App'x 333 (8th Cir. 2009).  Therefore, for these multiple reasons, Claim 5 against MDOC must be dismissed for failure to state a claim.  28 U.S.C. § 1915(e)(2)(B).

---

[15] As discussed in the Court's prior Order, to the extent Plaintiff is attempting to bring this (or any other) claim on behalf of other prisoners, he lacks the standing to do so.  Generally, to satisfy the standing requirement, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  A non-attorney, self-represented litigant (like Plaintiff) may not represent someone else in federal court.  *See* 28 U.S.C. § 1654 (stating that in all United States courts, "the parties may plead and conduct their own cases personally or by counsel"); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (stating that "because *pro se* means to appear for one's self, a person may not appear on another's behalf in the other's cause. A person must be litigating an interest personal to him."); *Lewis v. Lenc–Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986) (stating that non-lawyers may only represent themselves because "an individual may appear in the federal courts only *pro se* or through counsel.").

### B. Claim 1: Barred by the Statute of Limitations

Plaintiff's first claim of failure to protect (regarding an October 2018 incident where he was beat up by his cellmate) is barred by the statute of limitations. As previously explained, because 42 U.S.C. § 1983 provides no specific statute of limitations period, the controlling limitation period is the most appropriate period provided by state law. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984) (citing *Johnson v. Ry. Express Agency*, 421 U.S. 454, 462 (1975); *Foster v. Armontrout*, 729 F.2d 583, 584 (8th Cir. 1984)). Section 1983 claims are analogous to personal injury claims and are therefore subject to Missouri's five-year statute of limitations. *Sulik v. Taney Cnty., Mo.*, 393 F.3d 765, 766-67 (8th Cir. 2005); Mo. Rev. Stat. § 516.120(4). "Although the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint under 28 U.S.C. § 1915[] when it is apparent the statute of limitations has run." *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992) (citations omitted).

In this case, Plaintiff's Claim 1 is based on an incident that occurred in October 2018. ECF No. 25 at 12-14, 42. Plaintiff's initial complaint in this matter was dated March 19, 2024. ECF No. 1 at 89. Based on a five-year statute of limitations for § 1983 claims, any of Plaintiff's claims which accrued before March 19, 2019, are time-barred. This includes Plaintiff's Claim 1. As such, Claim 1 is barred by the statute of limitations and will be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

### C. Claims 2 and 6: Fail for Lack of Physical Injuries Under the PLRA

Plaintiff's Claims 2 and 6 of the Second Amended Complaint fail to state an actionable claim under the Prison Litigation Reform Act ("PLRA") for compensatory damages. The PLRA states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e); *see also*

*McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018) ("We interpret the PLRA to require more than a de minimis physical injury.").[16]

In this case, Plaintiff's Claim 2 alleges no significant physical injury arising out of the alleged violations of his constitutional rights. He lists his injuries as "discomfort," a cut on his hand, PTSD, anxiety, paranoia, and distrust. In general, allegations of discomfort or inconvenience do not rise to the level of a constitutional violation. *See Morris v. Zefferi,* 601 F.3d 805, 809-10 (8th Cir. 2010); *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995). The cut on Plaintiff's hand resulting from his disarming his cellmate is a de minimis injury as Plaintiff did not request or receive any medical treatment for it. Finally, Plaintiff cannot seek compensatory damages for emotional injuries such as PTSD, anxiety, paranoia, and distrust. Because Plaintiff seeks damages under Claim 2, the PLRA bars recovery and Claim 2 must be dismissed.

Similarly, as to Claim 6,[17] Plaintiff alleges injuries of "mental and emotional anguish." This claim is also barred by the PLRA for lack of physical injury.

### D. Claim 4: Dismissal of all defendants except CO Batreal for failure to protect

Plaintiff brings Claim 4 regarding his violent rape by cellmate Driskill in March 2023, against defendants B. Brown, Unknown Gutchess, Brian Davis, Captain Unknown Brown, Perry Arnold, Nicholas Skaggs, Caleb Thompson, Unknown Batreal, Captain Unknown Adams, Warden David Vandergriff, and PREA Coordinator Danny Francis.

The Supreme Court has made it clear that the Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

---

[16] Although the Eighth Circuit has recognized an exemption to this injury requirement for claims brought under the First Amendment, that exception does not apply here because these are not First Amendment claims. *See Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004) (holding prisoners may maintain actions for alleged First Amendment violations without claiming a physical injury).

[17] To the extent that Claim 6 reasserts that same allegations of failure to train against Warden Vandergriff and PREA Coordinator Francis as asserted in Claim 4, it is subject to dismissal for the same reasons described in relation to Claim 4.

As such, prison officials must take reasonable measures to guarantee inmate safety and protect prisoners from violence by other inmates. *Berry v. Sherman*, 365 F.3d 631, 633-34 (8th Cir. 2004) (citing *Farmer*, 511 U.S. at 832-33). There are limitations to this guarantee, however, as "prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (internal quotations and citation omitted).

"As prisons are inherently dangerous environments," not every injury suffered by a prisoner at the hands of another inmate, is grounds for constitutional liability. *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020) (citing *Farmer*, 511 U.S. at 834). "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837).

In this case, Plaintiff has not alleged enough factual allegations to support a claim that defendants B. Brown, Unknown Gutchess, Brian Davis, Captain Unknown Brown, Nicholas Skaggs, Perry Arnold, Captain Unknown Adams, and Caleb Thompson knew about an "excessive risk" to Plaintiff's safety, and deliberately disregarded it. Plaintiff alleges that defendants should have known he was at risk of rape by Driskill because Driskill was affiliated with Plaintiff's ex-gang and because a non-defendant CO and CO Thompson informed Driskill that Plaintiff was a "rat." As for Plaintiff's prior gang affiliation, he admits that he was transferred to PCC in 2018 after leaving that gang. Plaintiff's connection with the gang was at least five years old. This outdated connection is not enough to establish a substantial risk of harm. As for defendant

Thompson's statements to Driskill calling Plaintiff a "rat," Plaintiff admits that he questioned Driskill about those accusations and Driskill did not care. There are no facts suggesting that Driskill raped Plaintiff because of any accusations made about Plaintiff by defendants. Instead, the facts suggest that Driskill raped Plaintiff because he was under the influence of drugs. Plaintiff fails to state a claim of failure to protect against defendants B. Brown, Unknown Gutchess, Brian Davis, Captain Unknown Brown, Nicholas Skaggs, Perry Arnold, Captain Unknown Adams, and Caleb Thompson. These defendants will be dismissed under 28 U.S.C. § 1915(e)(2)(B).

However, based on Plaintiff's allegations that CO Unknown Batreal witnessed the rape in progress and did nothing to stop it from continuing, the Court will issue process on Plaintiff's Eighth Amendment failure-to-protect claim against Batreal in his individual capacity.

Finally, Plaintiff's allegations under Claim 4 against Warden Vandergriff and PREA Coordinator Francis are based on their positions as supervisors. Plaintiff alleges these defendants failed to properly train PCC staff. "A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (*citing Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)). However, "a supervisor's liability arises if: 'he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.'" *Id.* (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citations omitted)).

Plaintiff does not allege that Warden Vandergriff or PREA Coordinator Francis directly participated in a constitutional violation. Instead, he asserts that Vandergriff failed to train staff on how to properly assign inmates to cells and Francis failed to train staff on handling PREA-type complaints. However, as discussed above, there is no evidence that Plaintiff's cell assignment with Driskill caused a deprivation of his constitutional rights. The only deprivation of rights that

Plaintiff has sufficiently plead is that Batreal failed to stop a rape in progress. Batreal's alleged failure to act did not arise due to Plaintiff's cell assignment.

As to Plaintiff's claim against Francis based on incorrect handling of a rape complaint, Plaintiff does not provide any details except to say that when he "tried to report what happened" with Driskill, some PCC staff (most of which are not named defendants) told him they would let someone know but "no official statement was ever taken." ECF No. 25 at 25-26. Plaintiff does not specify what he told PCC staff when he "tried" to report the rape. Also, based on grievance documents filed by Plaintiff in this case, he did file multiple grievances at PCC based on the rape by Driskill. *See* ECF No. 1-1 at 13-14. Plaintiff's allegations are not enough to establish a violation of his constitutional rights based on a failure to train. There is no evidence that he was prevented from filing complaints based on the rape (instead, evidence suggests the opposite) nor does he assert an injury from a failure to train. As such, Plaintiff's failure-to-train claims against Warden Vandergriff and PREA Coordinator Francis fail to state a claim upon which relief may be granted and will be dismissed. 28 U.S.C. § 1915(e)(2)(B).

### E. Claim 7: Misjoinder and Severance of First Amendment Retaliation Claim

As to Claim 7, Plaintiff alleges that defendant CO Justin Conway disclosed information about him to fellow inmates in retaliation for Plaintiff naming Conway in a PREA complaint. The right to be free from retaliation for availing oneself of the grievance process is clearly established in the Eighth Circuit. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Nelson v. Shuffman*, 603 F.3d 439, 449-50 (8th Cir. 2010)). "To succeed on [a] § 1983 retaliation claim, [a plaintiff] must prove that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against [him] that would chill a person of ordinary firmness from engaging in that activity." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). Both filing a prison grievance and filing an inmate lawsuit are protected First Amendment activities. *Id.*

- 22 -

Although Plaintiff appears to have sufficiently stated a First Amendment retaliation claim here against Conway, this claim will be severed and dismissed. "Unrelated claims against different defendants belong in different suits, ... [in part] to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007). Complaints with unrelated claims brought by prisoner plaintiffs against different defendants should be rejected, either by severing the action into separate lawsuits or by dismissing improperly joined defendants. *Id.*; *see also* Fed. R. Civ. P. 21; *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844-45 (3rd Cir. 2006); *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000); *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 682 (6th Cir. 1988).

Federal Rule of Civil Procedure 21 permits severance of claims if they are improperly joined. The rule states, in pertinent part, that on motion or *sua sponte*, "the court may at any time, on just terms ... sever any claim against a party." Fed. R. Civ. P. 21. Severance is appropriate when the claims are "discrete and separate," each capable of resolution without dependence or effect on the other. *See Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (citations omitted).

When determining whether to sever claims pursuant to Rule 21, district courts often consider (1) whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof; (2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence. *See Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D. Pa. 2000) (citation omitted).

Plaintiff's allegations of First Amendment retaliation against CO Conway are not based on the same transaction or occurrence as his claim of failure-to-protect against Batreal. In

consideration of the joinder rules, Plaintiff's claims of First Amendment retaliation against CO Justin Conway must be severed and dismissed, without prejudice, from this action. If Plaintiff wishes to file a new action concerning his First Amendment retaliation claim against Conway, he may do so in a separate action.[18]

### Second Motion for Temporary Restraining Order (ECF No. 26)

## I.    Allegations in Support of Immediate Relief

Plaintiff has also filed a second motion for a temporary restraining order. ECF No. 26. In this motion, Plaintiff states that he believes his life is in danger because his most recent administrative segregation hearing resulted in an order that he "remain double cell compliant." *Id.* at 1. Plaintiff believes that "it would be considered unsafe for not just Plaintiff but also for his potential cellmates"—based on the allegations in his Second Amended Complaint and the pending state court criminal charges against him—for him to have a cellmate. *Id.* at 2. He seeks an order from the Court that he be maintained in a single man cell for the duration of this case and the duration of the pending state court charges. *Id.*

In support of his motion, Plaintiff filed a Declaration dated September 6, 2024, claiming that his access to the courts has been hindered. ECF No. 26-1. In this Declaration, Plaintiff discusses his initial administrative segregation hearing after transfer to ERDCC, complaints about a loss of legal paperwork after transfer, a lack of stamps and envelopes, damaged/stolen legal correspondence, and verbal assaults by fellow inmates. *Id.* at 1-6. Plaintiff also asserts that MDOC

---

[18] The Court notes that if Plaintiff chooses to pursue this claim in a separate lawsuit, based on the facts alleged in the Second Amended Complaint here, compensatory damages will not be available on this claim because Plaintiff does not allege any physical injury resulting from Conway's retaliation. Under the PLRA, a prisoner can maintain an action for alleged First Amendment violations without claiming a physical injury, but compensatory damages are not available, and relief is limited to nominal damages, punitive damages, and injunctive relief. *Dawdy v. Allen*, No. 2:17-CV-49-AGF, 2019 WL 1160815, at *2 (E.D. Mo. Mar. 13, 2019) (citing *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004)).

"by and through its representatives and subordinate staff members" is "trying to get [Plaintiff] killed by the inmate population." *Id.* at 6.

## II.    Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 27 (2008). In determining whether to grant a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015); *see also Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986).[19]

In the prison context, a request for injunctive relief must always be viewed with great caution because "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). For an injunction to issue, "a right must be violated," and the court must determine whether "a cognizable danger of future violation exists." *Id.* at 521. Furthermore, the "danger must be more than a mere possibility." *Id.* Regarding the issue of whether a situation is ripe for injunctive relief, the Eighth Circuit has noted that courts "should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Id.*

---

[19] The same standards are applied to both a request for a preliminary injunction and a request for a temporary restraining order. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (affirming district court's application of *Dataphase* factors to a motion for a temporary restraining order).

Plaintiff has the burden of proving that an injunction should be issued. *See Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019).

## III.    Discussion

Plaintiff's motion for injunctive relief fails because the substance of the motion is not related to the claims before the Court in this case. As such, the Court cannot grant the motion. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (explaining that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"); *Hale v. Wood*, 89 F.3d 840, 1996 WL 341206, at *1 (8th Cir. 1996) (unpublished opinion) (rejecting plaintiff's request for injunctive relief because he "failed to establish a connection between these injuries and the conduct he challenged in his complaint").

This lawsuit pertains to incidents which occurred while Plaintiff was incarcerated at PCC. However, Plaintiff's motion for temporary restraining order is based on incidents which have occurred at ERDCC since his transfer to that facility. There is no relationship between any alleged injuries at ERDCC and the PCC complained-about injuries in the Second Amended Complaint. In addition, of the twenty-two (22) named defendants in the Second Amended Complaint, only one has any connection to ERDCC – defendant MDOC. And MDOC is being dismissed from this case because the State of Missouri is protected by immunity and because the State is not suable under § 1983. The Court cannot issue injunctive relief against parties not named in this suit. *See Devose*, 42 F.3d at 471.

Finally, the Court notes that Plaintiff's motion asks this Court to sit in review of decisions made by prisons regarding discipline and appropriate housing assignments, based on a desire to maintain safety and security. Although prisoners retain their constitutional rights, there are limitations on those rights "in light of the needs of the penal system." *Murphy v. Mo. Dep't of*

*Corr.*, 372 F.3d 979, 982 (8th Cir. 2004).    A prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987).    Deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security.  *Id.*; *see also Sandin v. Connor*, 515 U.S. 472, 482 (1995) (stating that "federal courts ought to afford appropriate deference and flexibility to state [prison] officials trying to manage a volatile environment."); *Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir. 1986) (stating that "prison administrators are accorded 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979))).    The Court will not sit in review of these prison decisions made regarding safety and security.

For all these reasons, the Court declines to grant Plaintiff's second motion for a temporary restraining order.

### Motion to Compel (ECF No. 29)

In this motion, Plaintiff states that he has complied with the Court's Order to file a Second Amended Complaint but that it is his "understanding that he is to re-file his application to proceed in forma pauperis and to submit a new certified copy of his offender account statement."  ECF No. 29 at 2.  As such, Plaintiff requests that the Court send him a court form Application to Proceed In Forma Pauperis and that the Court issue an order compelling MDOC to produce a certified copy of his inmate account statement.  *Id.* at 3.

Plaintiff has already been granted leave to proceed *in forma pauperis* in this matter (ECF No. 15), so no new Application or certified account statement is needed.  As such, Plaintiff's motion to compel will be denied as moot.

**Conclusion**

Based on review of this matter under 28 U.S.C. § 1915, the Court will direct the Clerk of Court to issue process on Plaintiff's Eighth Amendment failure-to-protect claim against CO Unknown Batreal, in his individual capacity, for witnessing and failing to intervene while Plaintiff was being raped by his cellmate. In addition, the Court will sever Plaintiff's First Amendment retaliation claim against CO Justin Conway (Claim 7) for misjoinder under Federal Rule 21 and dismiss the claim. All other claims and defendants, including all official capacity claims, will be dismissed under 28 U.S.C. § 1915(e)(2)(B).

Furthermore, Plaintiff's second motion for temporary restraining order will be dismissed because it seeks immediate relief based on allegations that are not related to the allegations before the Court in this case. This is not the first time that Plaintiff has been denied a temporary restraining order in this case (*see* ECF No. 15), nor is it the first time that he has been denied a temporary restraining order based on unrelated allegations. *See Shattuck v. Lewis*, No. 4:24-cv-336-HEA, ECF No. 8 at 17-22. Plaintiff should not waste judicial resources by repeatedly filing motions for injunctive relief unrelated to the matters pending before the Court.

Finally, Plaintiff's motion to compel will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's official capacity claims against all defendants, brought under 42 U.S.C. § 1983, are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that that Plaintiff's First Amendment retaliation claim against Justin Conway is **SEVERED and DISMISSED**, without prejudice, **DUE TO IMPROPER JOINDER.** *See* Fed. R. Civ. P. 21. Plaintiff may refile this claim in a separate complaint if he so chooses.

- 28 -

**IT IS FURTHER ORDERED** that Plaintiff's individual capacity claims against defendants Missouri Department of Corrections, Steven Francis, Jennifer Currie, Joshua Browers, Shiloh Miller, Unknown Pull, Derrik Barker, David Vandergriff, Unknown Adams, Danny Francis, B. Brown, Unknown Gutchess, Brian Davis, Unknown Brown, Perry Arnold, Caleb Thompson, Matthew Barton, Nicholas Skaggs, Unknown Warden, and Unknown Bed Broker, brought under 42 U.S.C. § 1983, are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the Second Amended Complaint, pursuant the service agreement the Court maintains with the Missouri Attorney General's Office, as to Plaintiff's claim of failure-to-protect in violation of the Eighth Amendment against defendant correctional officer Unknown Batreal, in his individual capacity.

**IT IS FURTHER ORDERED** that Plaintiff's second motion for temporary restraining order [ECF No. 26] is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel [ECF No. 29] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this partial dismissal would not be taken in good faith.

An Order of Partial Dismissal will be filed separately.

Dated this 28th day of October, 2024.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE